W. M. RINGER, *Appellee*, v. THE ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, *Appellant*.

No. 17,161.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Contributory Negligence*. An experienced
section hand was injured while prying against a rail, by the
end of his bar slipping where it rested upon an angle iron used
as a fulcrum. In an action against the railroad company,
based upon the alleged negligence of the defendant in furnish-
ing him an unsafe tool, he testified that he and another hand
were directed by their foreman to attempt to line the track,
and to hurry up a little as 'a train was expected; that two
bars were immediately available for the purpose, one sharp-
ened in the shape of the letter "V," the other like a chisel;
that previously he had always selected for his own use the
former, because it did not slip so badly as the latter; that on
the occasion of his injury he picked up one of the bars with-
out noticing which it was, and did not learn until after his
injury that it was that with the chisel-shaped end; that its
slipping was caused by the point being worn off about half an
inch—a condition that could have been ascertained at a glance.
*Held*, that his use of the bar without any examination what-
ever, in view of the circumstances stated, amounted to such
negligence as to preclude his recovery.

Appeal from Bourbon district court. Opinion filed
June 10, 1911. Reversed.

*R. R. Vermilion*, for the appellant.

*A. M. Keene*, and *E. C. Gates*, for the appellee.

The opinion of the court was delivered by

MASON, J.: W. M. Ringer recovered a judgment
against the St. Louis and San Francisco Railroad Com-
pany on account of an injury received while in its em-
ploy, and the defendant appeals. The essential facts,
as shown by the plaintiff's own testimony, may be
thus summarized: The plaintiff was a section hand,
and had been engaged in that work for over seven
years. He and another hand were at work under a

foreman, who directed them to take bars and try to line the track—to move it a little to one side, telling them to hurry up a little, and saying he was looking for a train. There were two bars on the hand car on which the tools were carried. One of them, which the plaintiff described as a regular lining bar, was "V" shaped at the point—that is, the end was brought to an edge by being dressed equally on opposite sides. The other, which the plaintiff called a pinch bar, was shaped at the end like a chisel, the edge being formed by dressing one side only. The plaintiff took the pinch bar, and with it cleared some earth under a rail, placing there an angle bar to serve as a fulcrum. He rested the end of the pinch bar upon the angle bar, and by prying against the rail endeavored to force it to one side, the other hand doing the same with the other bar. The end of the plaintiff's bar slipped upon the angle bar, and in consequence he fell, receiving the injury on account of which he sued. The end or point of the bar used by the plaintiff was worn off about half an inch, making it blunt, and giving it a chance to slip. The conduct of the defendant which is relied upon as negligence is the furnishing the plaintiff with a tool (the bar in question) which was unsafe by reason of the condition stated. There was no difficulty in seeing that the bar was blunt and worn off; the fault could be told at a glance. The bar used by the plaintiff was one which had been left on the side of a dump by an extra gang. They had had it across a bake oven and it had become bent. The plaintiff something over a year before the accident took it to the shop and had it straightened, and after that it was used as one of the tools of the crew with which he worked. He never noticed that it was blunt and worn until after his injury. He knew the difference in the two bars, however, and almost always got the other bar if he could, selecting it because it would not slip so badly as the pinch bar, which he had never before used. On the day of his injury he

was in a hurry and took the first bar he got hold of; he did not pay any attention as to which bar he took; and he did not look at it, and did not know which he had until after he was hurt.

Upon these facts we are constrained to hold that the plaintiff can not recover. "The facts and the danger they presented were both within the comprehension of any ordinarily intelligent and prudent man, and were as completely within the knowledge and appreciation of the plaintiff as of his employer. Therefore he can not recover." (*Gillaspie v. Iron-works Co.,* 76 Kan. 70, 73.) The plaintiff had as good an opportunity as the foreman to know of the actual condition of the pinch bar, and his experience enabled him to judge of the effect the wearing away of its point would have upon its slipping. True, he had no immediate opportunity to select any bar other than one of the two upon the hand car, but the defective bar had been for a long time a part of the outfit of tools with which his crew worked and he had abundant chance to observe its condition. There was no emergency requiring instant action. The foreman's direction to hurry up a little, given because a train was expected, did not prevent the plaintiff's taking note of which bar he was using, and of its condition. The case seems clearly within the line of decisions of which that just cited is an illustration, holding that an employer is not liable for an injury resulting from a danger which is equally obvious to the employee. (34 Cent. Dig. c. 1198, § 611; 13 Dec. Dig. p. 565, § 219 [2] ; 20 A. & E. Encycl. of L. 130; 26 Cyc. 1202; 1 L. R. A., n. s., 948, note; 98 Am. St. Rep. 313, note.) An application of the same principle has given expression to the rule that an employer is not liable for a failure to inspect simple tools in common use. (98 Am. St. Rep. 298, note; 1 L. R. A., n. s., 948, note; 13 L. R. A., n. s., 668, note.) In the following cases in which employees sustained injuries through using defective crowbars recovery was denied upon the ground

that the defects were obvious: *Holt v. Chicago, Milwaukee & St. Paul R. Co.*, 94 Wis. 596; *L., E. & St. L. Con. R. R. Co. v. Allen*, 47 Ill. App. 465; *McBride v. The Indianapolis Frog and Switch Company*, 5 Ind. App. 482; *Vandalia R. Co. v. Adams*, 43 Ind. App. 664; *Houston & T. C. R. Co. v. Scott*, (Tex. Civ. App. 1901) 62 S. W. 1077; *G. W. T. & P. Ry. Co. v. Smith*, 37 Tex. Civ. App. 188. The line of reasoning followed is indicated by these quotations:

"By reasonable attention he would have learned the condition of the bar. By inattention to its condition he took upon himself the risk of there being some defect in it. The consequences of the risk he took are his misfortune. It can not well be shifted over onto the defendant. If he had observed and discovered the defect, it was negligence to use the bar. If he did not observe and discover the defect, he was negligent in failing to observe and discover it. Such negligence prevents his recovery." (*Holt v. Chicago, Milwaukee & St. Paul R. Co.*, 94 Wis. 596, 599.)

"The defect was patent. The fact that, as a rule, the master has a better opportunity to inspect the machinery or tools, and must use a higher degree of care than his servant, does not release the servant from exercising care, and this is specially true of so simple a tool as a crowbar placed in the hands of the servant, and which can be as readily, if not more readily, inspected by him than by the master. The statement of appellee that he did not know of the defect is vain, when from his own evidence it appears that the slightest examination would have shown the defective condition." (*Vandalia R. Co. v. Adams*, 43 Ind. App. 664, 668.)

Under circumstances similar in principle to those here presented the ground of the defendant's nonliability is sometimes called assumption of risk and sometimes contributory negligence. Recent notes distinguishing the two defenses are found in 28 L. R. A., n. s., 1215, and 18 A. & E. Ann. Cas. 960. A special feature of the plaintiff's testimony in this case makes it clear that his injury was occasioned by his own failure to

exercise due care.  He knew that there were two bars upon the hand car, differing in the manner in which they were sharpened, and that for some reason one of them was more likely to slip than the other.  This matter had been brought to his attention with such distinctness that on account thereof he had always heretofore selected the safer bar to work with.  Upon this occasion he picked up the bar which he knew to be more apt to slip, and not only failed to notice its condition, notwithstanding that knowledge, but put it to use without observing which of the two bars he held.  He said upon the stand that he supposed that whether or not a bar slipped would depend a good deal on how its point was placed on the angle bar; and this would obviously be true.  In using a bar which he knew to be more likely to slip than it should be—than bars used for the purpose usually were—ordinary prudence required that he use it in a manner adapted to its peculiarity.  Since he handled it just as though it had been perfectly adapted to his purpose, without giving it enough attention to observe a characteristic which he knew existed, and which rendered it less safe than the other, he was manifestly not exercising reasonable care for his own protection.  His knowledge that there was a difference in the two bars—a difference affecting their relative safety—placed him under an additional obligation to take notice of the one he was using—to inspect it sufficiently to ascertain which of the two it was.

The judgment is reversed and the cause remanded with directions to render judgment for the defendant.