No. 20,963.

J. C. BARNES, *Appellant,* v. JOHN AKINS, *Appellee.*

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Icy Sidewalk—Personal Injuries—Assumption of Risk.* In an action brought by an employee who was injured by slipping upon an icy sidewalk while helping to carry goods from his employer's store during a fire, the negligence relied upon being the failure to cover the walk with some material rendering it less slippery, it is held that the plaintiff is precluded from recovering by the fact that he knew the condition of the walk and must be deemed to have assumed the risk resulting therefrom because of the obviousness of the danger.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed July 7, 1917. Affirmed.

F. B. Wheeler, of Pittsburg, and A. M. Keene, of Fort Scott, for the appellant.

J. J. Campbell, and C. S. Denison, both of Pittsburg, for the appellee; John L. Kirkpatrick, of Pittsburg, of counsel.

The opinion of the court was delivered by

MASON, J.: A feed and seed store owned by John Akins caught fire about eight o'clock on a winter morning. The fire department threw water into and upon the building, a part of which ran over the sidewalk and street in front of it, and in a short time formed ice. J. C. Barnes, a teamster in Akins' employ, was helping in the work, in which from fifteen to thirty people were engaged, of getting out as much of the stock as possible. He undertook to carry a ninety-eight pound sack of bran on his shoulder to a place of safety across the street. He passed out through the front door, but just at the outer edge of the sidewalk he slipped on the ice and fell, receiving injuries on account of which he brought an action against his employer, alleging negligence in the failure to furnish him a safe place in which to work—specifically in omitting to have some substance sprinkled over the walk to render it less slippery. A demurrer to his evidence was sustained, and he appeals.

The plaintiff's testimony showed these facts: Some thirty or forty minutes before his injury he had been on the sidewalk, which at that time was "wet and sloppy"—covered with water which had started to freeze; it was very sloppy—enough to get his feet wet; the thermometer then marked about zero, having been lower during the night; he entered the building and remained there from thirty to forty minutes, when the manager of the business, who was standing upon a pile of feed, said to him, "Let's get out what we can of it," and handed him the sack of bran. Concerning the conditions at the time of his fall he testified:

"When I first stepped upon the walk I did not notice that the walk was icy. A man walking rather fast would n't notice very much. I suppose if I had been paying particular attention I could have told when I stepped from the building as to whether there was ice there. . . . I was paying attention to the feed. I did n't have in mind the idea that I might slip upon that walk while carrying the feed. If I had I would have set the feed down. There was nothing to prevent me from seeing that there was ice upon that sidewalk and upon that street, any more than I did n't think about it being froze hard enough to make it that slick. I simply relied upon the fact that I had been out there recently and it was slushy, and I thought it might continue to be in the same condition. If there had been some straw or ashes, or anything of that kind thrown across the street, I would likely saw it. I knew there was nothing of that kind across the street when I started upon that trip at the time I fell and was injured. . . . The water which froze upon the walk and upon the street was water which was being thrown upon the building and into the building by the fire department, and afterwards run off the building and upon the sidewalk. It did not run out of the building at that place. I knew they were applying water upon that building. I knew that if they quit for a few minutes it would freeze and make it slippery, but I did n't know they had quit. They were applying it on different parts of the building. They had been applying it where the men were carrying feed out of there when I was out before."

It may well be doubted whether the obligation of the employer with respect to furnishing a safe place in which to work extends to such a situation as that here presented. But assuming that such is the case, and that the evidence tended to show negligence on the part of the defendant, we are of the opinion that the court was justified in sustaining the demurrer to the evidence on the ground that the plaintiff must be deemed to have assumed the risk arising from the slippery walk. The prevailing rule on the subject has been thus stated: "The

servant assumes all the ordinary risks of the service and all of the extraordinary risks—*i. e.,* those due to the master's negligence—of which he knows and the dangers of which he appreciates." (3 Labatt's Master & Servant, 2d ed., § 1186*a,* p. 3189.) The test is commonly said to be whether the facts and danger are as fully within the knowledge and appreciation of the employee as of the employer (*Gillaspie v. Iron-works Co.,* 76 Kan. 70, 90 Pac. 760; *Iron-works Co. v. Green,* 79 Kan. 588, 100 Pac. 482; *Metz v. Railway Co.,* 90 Kan. 463, 135 Pac. 578; citations in *Ringer v. Railway Co.,* 85 Kan. 167, 169, 116 Pac. 212), although this statement is criticised in the work just cited on the ground that logically the mental attitude of the employee alone is important. (§ 1184.) It is argued that the evidence justified an inference that the defendant's manager knew of the icy condition of the sidewalk, and that the plaintiff did not, because the former had been upon the street within the half hour preceding the accident, while the latter had not. And the failure to warn the plaintiff of the danger is urged as a form of the defendant's negligence. The plaintiff testified that the manager had been upon the pile of feed for ten or fifteen minutes before he handed him the sack of bran. Other witnesses saw him upon the sidewalk before that, but how long before is not shown. That, however, is not very material. The plaintiff knew of the water upon the sidewalk, knew that it had begun freezing, and knew that the temperature was about zero. The situation was not one involving either expert information or close observation. It is a matter of common knowledge that more or less ice would form under such circumstances, and that the walk would become slippery. The plaintiff was fairly chargeable with as much knowledge of the condition of the walk as the manager possessed, or as he would have received through any warning given him. It is a familiar rule that in order for the defense of assumption of risk to be available the employee must not only have known of the physical facts that existed, but must also have appreciated the danger to which they exposed him. (*Brizendine v. Railroad Co.,* 96 Kan. 691, 153 Pac. 495.) But this does not mean that the sense of danger must have actually been present in his mind at the time of his injury. He must be deemed to appreciate the danger if it is one that is perfectly obvious to a per-

son of his intelligence from the known facts. If through momentary forgetfulness he fails to act upon the knowledge that he has, this does not avoid the defense of assumption of risk. (3 Labatt's Master & Servant, § 1193.) We do not regard the plaintiff's task of carrying the sack of bran on his shoulder as belonging to that class of occupations that so fully engage the attention of a workman as to affect his appreciation of his surroundings. The plaintiff invokes the rule stated in the second paragraph of the syllabus in *Wurtenberger v. Railway Co.*, 68 Kan. 642, 75 Pac. 1049, that "when a master orders a servant into a situation of danger, and, in obeying the command, he is injured, the law will not charge him with contributory negligence or with an assumption of the risk, unless the danger was so glaring that no prudent man would have encountered it, even under orders from one having authority over him." The test with respect to the conduct of a reasonably prudent person has to do with the defense of contributory negligence rather than with that of assumed risk, and it was so applied in the opinion in the case cited. So far as the latter defense was concerned the decision was based upon the fact that the workman's injury was due to the operation of a piece of mechanism with which he was not familiar. Cases are cited growing out of the duty of a city to keep sidewalks in a safe condition for travel. We do not consider them pertinent, as the defense of assumed risk is one growing out of the relation of employer and employee. The suggestion is made that the doctrine of assumption of risk should not be applied because the plaintiff was not injured in the line of his usual duties, but during a mere casual and temporary employment growing out of a sudden emergency. If that consideration does not relieve the defendant from the ordinary obligation of an employer with respect to a safe working place, we think it should not prevent the application of the usual rule regarding the assumption of risk.

The judgment is affirmed.