No. 32,867

DAUCIE MONTEITH, *Appellant*, v. W. H. LITCHENBURGER, *Appellee*.

(58 P. 2d 57)

Opinion filed June 6, 1936.

*W. H. Clark,* of Hoxie, *D. P. Moyers* and *W. E. Mahin,* both of Norton, for the appellant.

*Ray C. Sloan,* of Hoxie, *E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for wrongful death. Judgment was for defendants, sustaining a demurrer to the evidence of plaintiff. Plaintiff appeals.

The action was brought against W. H. Litchenburger, A. B. Person and Charles Smith. It was dismissed as to Smith at the close of the evidence of plaintiff. The demurrer of Person and Litchenburger to the evidence of plaintiff was sustained. Plaintiff concedes that it was rightfully sustained as to Person, hence this appeal concerns the sustaining of the demurrer filed by defendant Litchenburger.

The petition alleged that there was on February 23, 1933, in Selden, Kan., an underground tank for the purpose of storing gasoline; that the tank would hold about 8,000 gallons of gasoline, and on February 23, 1933, it contained about 400 gallons.

The petition then alleged that Litchenburger, who was in charge of the filling station, informed deceased that a hole in the bottom of the tank was stopped up and that it would only take a minute for deceased to go into the tank and open up the hole, and that he would give deceased five dollars to do so.

The petition then alleged that deceased, having had no experience in the handling of gasoline, went down into the tank; that upon his

going into the tank he was almost instantly killed; that defendants knew, or by the exercise of ordinary care should have known, that some injury would result to any person permitted to go into the tank.

The petition then alleged that the death of deceased was caused by the negligence of defendants in maintaining a dangerous nuisance, and that it was further caused by the negligence of defendants in hiring deceased to go into the tank.

The answer of defendant Litchenburger was first a general denial. The answer further alleged that deceased knew and was advised of the danger of entering the tank and that he assumed the risk. The reply was a general denial.

Doctor Forbes testified that he was called to see deceased; that he was lying on the ground by the manhole of the tank and was dead. He further testified that if a person went into an underground tank containing gasoline and breathed the gas directly into his lungs it would be fatal at once. He testified that in his opinion the death of deceased was caused by gasoline fumes.

The widow of deceased testified that he had made a living running a tractor, and doing mechanical work on automobiles.

D. M. Cheney testified that he was present when deceased came to the place where the tank was located. He testified as follows:

"Q. Now, just go ahead in your own way and tell what was said between these two men, between Lester Monteith and Mr. Litchenburger. A. Well, before Mr. Montieth came up there we were talking about the tank and I asked Bill what was the matter, and he said the screen had plugged up and he couldn't get gasoline up in the bowl in front, and Mr. Montieth came up about that time, and he said he would give $5 to anybody to go in there and open it. I said I wouldn't want to go in there for $5, or any amount of money, if I expected to spend it. That is about all I said. I didn't think then that Mr. Montieth was going in. I went away about that time."

He further testified that he left just after this conversation. He testified that he received bulletins once in a while from his company warning people against going into gasoline tanks. He further testified that during the time that he was present at the scene of the tragedy he heard the conversation between Litchenburger and deceased and he did not hear Litchenburger warn deceased that it was dangerous for him to go into the tank.

Dr. G. W. Hammel testified that the ordinary fumes from gasoline have an odor but that the fumes of gasoline that actually cause death are odorless.

Harry Tremble testified he saw deceased go into and come out of

the tank; that he was in the tank about five minutes; that he had a rope tied around him.

In sustaining the demurrer of Litchenburger the court stated that since a demurrer to the evidence searched the record it was proper to examine the petition and that when this was done it appeared that the petition did not contain an allegation that deceased had not been warned by defendant as to the danger involved in going into the tank. As to this question, it appears that the answer of defendant Litchenburger alleged that he warned deceased, and the reply of plaintiff denied this. The question was thus properly put in issue. The statement of the court then pointed out the testimony of the witness Cheney that he would not go into the tank for five dollars or any other sum and expect to spend the money; that the deceased was a mature man and had worked as a mechanic on automobile engines and was experienced with the use of gasoline. The court held that deceased assumed the risk attendant on going into the tank and that the demurrer should be sustained.

There are many authorities on the question of assumption of risk. A late one is *Blevins v. Union Pac. Rld. Co.,* 133 Kan. 185, 299 Pac. 593. That was a case where a locomotive fireman stuck his head out of the cab window just as the engineer opened wide the throttle causing a large quantity of cinders to come out of the smokestack. A cinder lodged in his eye, injuring him. When he brought an action this court held that he assumed the risk. The court said:

"Where, however, the consequent danger arising from the negligent act was obvious and so patent as to be readily understood by an ordinarily prudent person, the employee cannot be heard to say that he did not realize or appreciate it and he is charged as a matter of law with the assumption of the risk." (p. 188.)

In *Lively v. Railway Co.,* 115 Kan. 784, 225 Pac. 103, this court said:

"It is only where the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent man could appreciate and understand, the workman who persists in the employment assumes the risk of it and the jury must be so instructed." (p. 788.)

In *Seaboard Air Line v. Horton,* 233 U. S. 492, 34 S. Ct. 635, the court said:

"Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into account in fixing the rate of wages. And a workman of mature

years is taken to assume risks of this sort, whether he is actually aware of them or not." (p. 504.)

In *Barnes v. Akins*, 101 Kan. 359, 166 Pac. 474, this court said:

"It is a familiar rule that in order for the defense of assumption of risk to be available the employee must not only have known of the physical facts that existed, but must also have appreciated the danger to which they exposed him. (*Brizendine v. Railroad Co.*, 96 Kan. 691, 153 Pac. 495.) But this does not mean that the sense of danger must have actually been present in his mind at the time of his injury. He must be deemed to appreciate the danger if it is one that is perfectly obvious to a person of his intelligence from the known facts. If through momentary forgetfulness he fails to act upon the knowledge that he has, this does not avoid the defense of assumption of risk." (p. 361.)

It is not deemed necessary that further citations as to the general rule in cases where assumption of risk is raised should be given. When we consider the surrounding facts and circumstances in this case we have a case where the employer offered an unusual wage for a few minutes' work. This of itself should have been some warning to deceased that the job for which he was being hired involved unusual risks. These were all ordinary people such as are usually found on the main street of a western Kansas town. The fact that such a price should have been offered for a few minutes' work was a circumstance which would have put an ordinary reasonable man on his guard. People do not ordinarily stand around making such offers. Furthermore, it appears that the statement made by witness Cheney that he would not "go in there for $5 or any amount of money if I expected to spend it" was made in the hearing of deceased. The warning did not need to be in any particular words, nor was it necessary that it should come from defendant. It is sufficient if deceased was told enough to put an ordinary prudent man on his guard. Clearly the words testified to were sufficient for that. Finally, it appears that the danger was such that it must have been obvious to a man of the intelligence of deceased. It is difficult to imagine that a grown man who had worked with gasoline engines as a mechanic should not appreciate the danger of going into a tank in which there was some gasoline and which was not ventilated except at the manhole at which he entered the tank.

We have concluded that the evidence of plaintiff showed that deceased assumed the risk attendant on entering the gasoline tank; was guilty of contributory negligence as a matter of law, and that the demurrer to the evidence of plaintiff was properly sustained.

The judgment of the trial court is affirmed.