No. 118,379

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HUGH MICHAEL HAWKINS,
*Appellant/Cross-appellee*,

v.

SOUTHWEST KANSAS CO-OP SERVICE and
TRAVELERS INDEMNITY COMPANY,
*Appellees/Cross-appellants*.

SYLLABUS BY THE COURT

K.S.A. 44-504(b) and (d) are considered and applied in determining an employer's subrogation lien and future credit for workers compensation benefits provided to an injured employee.

Appeal from Workers Compensation Board. Opinion filed April 3, 2020. Reversed and remanded with directions.

*Scott J. Mann*, of Mann, Wyatt & Rice, LLC, of Hutchinson, for appellant/cross-appellee.

*William L. Townsley, III*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees/cross-appellants.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

ATCHESON, J.: This case requires us to apply the statutory scheme permitting an employer that has provided workers compensation benefits to an injured employee to obtain both a subrogation interest in any recovery the employee receives from a third party and a credit for future benefits. The governing statute, K.S.A. 44-504, is something less than a model of clarity and generated a split decision from the Workers

1

Compensation Board in this case. We part ways with the Board majority on the proper methods for determining the subrogation lien and the future credit and, therefore, reverse and remand for further proceedings.

Consistent with K.S.A. 44-504(d), the jury verdict in Hugh Hawkins' third-party negligence action should be used to determine the fault of Southwest Kansas Co-op Service, his employer, and the measure of Hawkins' damages from his workplace injury. The jury decided both those issues. As we explain, those determinations then drive the reduction in Southwest Kansas Co-op's subrogation lien and future credit for workers compensation benefits it has provided or will provide to Hawkins. The Board erred in applying the jury's finding of fault to Hawkins' settlement with one of several defendants in his negligence action to compute the reduction.

Consistent with K.S.A. 44-504(b), Southwest Kansas Co-op's credit for future benefits should have been determined using each annual settlement payment to Hawkins from one of the third-party defendants when that payment was received. The Board erred in aggregating those payments and relying on the total amount, when Hawkins would not receive the last installment for 20 years.

PROCEDURAL AND FACTUAL POSTURE OF CASE

This appeal comes to us through the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See K.S.A. 44-556(a) (decisions of Workers Compensation Board subject to review in Court of Appeals under KJRA). The material facts in this appeal are undisputed. The controlling issue requires us to determine what subrogation and credit rights those facts trigger under K.S.A. 44-504. That is a matter of statutory interpretation and presents a question of law. See *State v. Murdock*, 299 Kan. 312, 314, 323 P.3d 846 (2014) (interpretation of statute a question of law given unlimited review on appeal); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011)

2

(when material facts undisputed, issue presents question of law). We owe no particular deference to the Board in deciding matters of law, so we exercise unlimited review. *Fernandez v. McDonald's*, 296 Kan. 472, 475, 292 P.3d 311 (2013). And under the KJRA, we may reverse an agency action, such as the Board's order, for legal error. K.S.A. 77-621(c)(4).

Hawkins suffered serious permanent injuries while employed by Southwest Kansas Co-op in 2006 when a boom crane in which he was working collapsed. Although the precise nature of the injuries is immaterial to this appeal, we understand them to be fairly characterized as catastrophic, and Hawkins has required continuing medical care as a result. Again, for purposes of this appeal, Hawkins' right to workers compensation benefits from Southwest Kansas Co-op is undisputed. Based on the administrative law judge's decision issued in 2017 regarding subrogation, we understand Southwest Kansas Co-op to have provided workers compensation benefits to Hawkins valued at $852,460.34. We further understand everyone expected Hawkins would continue to receive benefits. In explaining our decision, we use the numbers appearing in the decisions issued by the administrative law judge and the Board. Those numbers and our arithmetic using them are entirely secondary to the statutory methods we outline for determining an employer's subrogation interest and future credit under K.S.A. 44-504 for workers compensation benefits provided to an injured worker.

In the interests of completeness, we mention Travelers Indemnity Company, as Southwest Kansas Co-op's insurance carrier, has actively participated in the workers compensation proceedings, including this appeal. For convenience, we refer to Southwest Kansas Co-op without repeatedly mentioning Travelers, as well, since they have united legal interests and have been represented by the same lawyers.

In 2007, Hawkins filed a civil action in Stanton County District Court to recover damages from other parties he contended bore some legal responsibility for the collapse

3

of the crane and his injuries. Ultimately, Hawkins proceeded against three named defendants: JLG Industries, Inc., which manufactured the crane in 1995; United Rentals Northwest, Inc., the successor in interest to a company that bought the crane from JLG and sold it in 1999; and Western Steel and Automation, Inc., which bought the crane in 1999 and had leased it to Southwest Kansas Co-op. Southwest Kansas Co-op chose not to exercise its right under K.S.A. 44-504(b) to intervene in that action to protect its statutory subrogation interests.

Pertinent here, the Stanton County action played out this way:

• Hawkins settled with Western Steel in 2008 for $925,000. The district court approved the settlement that designated the full amount paid as damages for a loss of consortium claim. Neither the district court nor the settlement itself apportioned fault among the defendants or specifically to Western Steel or Southwest Kansas Co-op. Under K.S.A. 44-504(b), an employer may not assert a subrogation lien or claim for future benefits against damages an employee recovers from a third party in satisfaction of a loss of consortium claim.

• Hawkins settled with JLG in early 2011. The settlement amount depended on the outcome of separate litigation between a successor in interest to JLG and the successor's insurance carrier. Ultimately, Hawkins was to receive annual payments of $75,000 for 20 years, yielding a total recovery of $1.5 million. Hawkins began receiving those payments in 2012. Payments were made at least through 2016, although their status since then is not readily apparent from the briefing or the appellate record. The district court also approved the settlement with JLG and accepted a stipulation that Hawkins' actual damages were $6.3 million. The settlement did not apportion fault in any way.

• Hawkins went to trial in April 2011 on his negligence claims against United Rentals. The district court submitted Western Steel, JLG, and Southwest Kansas Co-op as

4

phantom defendants to the jury for comparative fault purposes. The jury had the option to apportion fault to Hawkins, as well. The jury attributed no fault for the crane mishap to United Rentals, JLG, or Hawkins and found Western Steel to be 75 percent at fault and Southwest Kansas Co-op to be 25 percent at fault. The jury determined Hawkins' damages to be $4,081,916.50. Hawkins appealed the judgment entered on the jury verdict, and a panel of this court affirmed. *First National Bank of Hutchinson, as Conservator for Hugh M. Hawkins v. United Rentals Northwest, Inc.*, No. 109,664, 2014 WL 5346255 (Kan. App. 2014) (unpublished opinion).

After the Stanton County action wrapped up, Southwest Kansas Co-op filed a request in the workers compensation proceeding for a determination of its statutory subrogation lien and any credit for future benefits that Hawkins might receive. Under K.S.A. 44-504(a), employees injured in the course of their employment may receive workers compensation benefits from their employers and may independently pursue civil actions against third parties they believe have some legal liability for their injuries. If the employee recovers from a third-party wrongdoer, the employer commonly will have a subrogation lien against that recovery and possibly a credit for future benefits. Two subsections of K.S.A. 44-504 govern workers compensation subrogation and credits:

> "(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. . . . Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of

5

such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid. . . .

    . . . .

    "(d) If the negligence of the worker's employer or those for whom the employer is responsible, other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker."

In a decision issued in February 2017, the administrative law judge determined Southwest Kansas Co-op's subrogation rights and credit against future benefits due Hawkins. For reasons the judge did not fully explain, she determined the subrogation lien by reducing Hawkins' settlement from JLG, which she valued at $1.5 million, by 25 percent, reflecting the fault the jury attributed to Southwest Kansas Co-op in the trial, and subtracting that amount ($375,000) from the workers compensation benefits paid ($852,460.34). Based on that approach, Southwest Kansas Co-op had a subrogation lien against Hawkins' recovery for $477,460.34. The judge then found Southwest Kansas Co-op had a credit against future benefits of $272,539.66. She subtracted the benefits paid from the JLG settlement yielding a credit of $647,539.66, which she then reduced by the $375,000, derived from Southwest Kansas Co-op's percentage of fault as applied to the JLG settlement.

The judge referred to and ostensibly relied on formulas for computing subrogation and credits under K.S.A. 44-504 developed in *Enfield v. A.B. Chance Co.*, 228 F.3d 1245 (10th Cir. 2000). As we later explain, we agree with *Enfield*'s method for computing subrogation liens but not its method for future credits. The administrative law judge misapplied *Enfield* in determining the subrogation lien. Hawkins and Southwest Kansas Co-op appealed the judge's determination to the Board.

6

Three members of the Board, hence a majority, essentially adopted the administrative law judge's reasoning and affirmed the result she reached. The majority also relies on *Enfield* and discusses at length *Harwood v. Feyh*, No. 108,603, 2013 WL 5187637 (Kan. App. 2013) (unpublished opinion). But *Harwood* is inapposite to the issues in this case. In *Harwood*, this court rejected the injured employee's argument that his employer's subrogation lien should be proportionately reduced because his actual recovery from a third-party wrongdoer, who admitted liability, was substantially less than his actual damages. The employer in that case bore no fault for the employee's injuries. As the *Harwood* court recognized, K.S.A. 44-504(b) includes no allowance for reducing an employer's subrogation lien in that circumstance. 2013 WL 5187637, at *3. But *Harwood* doesn't presume to deal with the reduction of a subrogation lien or a future credit based on an employer's adjudicated fault, as mandated in K.S.A. 44-504(d).

Another Board member would have discarded the jury's determination of Southwest Kansas Co-op's fault and would have used the settlement with JLG without reduction to compute the subrogation lien and the future credit. The Board member did not then make the actual computations in his short concurring and dissenting opinion. His position matched the outcome Southwest Kansas Co-op principally advanced.

The fifth Board member dissented and would have used both the jury's allocation of fault to Southwest Kansas Co-op and its assessment of Hawkins' actual damages in figuring the subrogation lien—an approach consistent with *Enfield*. The Board member says the jury found the damages to be about $3.9 million, although the actual figure was about $4.1 million. Applying Southwest Kansas Co-op's 25 percent fault to either amount yields an offset that exceeded the workers compensation benefits paid and, thus, wiped out any subrogation lien. The dissenting Board member did not specifically address whether Southwest Kansas Co-op might have a credit against future benefits.

Hawkins appealed the Board's decision, and Southwest Kansas Co-op has

7

cross-appealed.

LEGAL ANALYSIS

*Workers Compensation Principles and Comparative Fault Law*

We begin by looking at several basic principles associated with workers compensation and how that administrative process interacts with tort law.

The historical public policy underlying workers compensation helps illuminate the purpose for subrogation liens and future credits in K.S.A. 44-504 and how they should be measured. Before the enactment of workers compensation, injured employees could bring tort actions against their employers. But they had to prove the employer's negligence and faced a bar to recovery if they were contributorily negligent. Those were formidable legal obstacles. See *Ringer v. Railroad Co.*, 85 Kan. 167, 116 P. 212 (1911) (contributory negligence barred workplace injury claim). When injured employees could not work, they and their families often were left destitute and became public charges. Workers compensation statutes sought to mitigate that socially undesirable outcome by replacing common-law tort remedies with a streamlined administrative process designed to provide limited benefits to injured workers promptly and without regard to fault. The benefits included medical care, rehabilitative treatment, and at least partial income replacement— all aimed at returning injured employees to the workforce and keeping their families from impecuniousness in the meantime. The administrative adjudicatory scheme largely shifted the financial losses associated with workplace injuries from the individual employee to employers, who could then choose to insure against those losses as a cost of doing business. By the same token, however, employers could not be sued in traditional negligence actions and, thus, avoided facing juries, satisfying potentially large verdicts for noneconomic damages, and paying lawyers to defend protracted civil litigation. See *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 883, 942 P.2d 591 (1997)

8

(acknowledging underlying purpose of workers compensation legislation); *Green v. Burch*, 164 Kan. 348, 355-56, 189 P.2d 892 (1948) (detailed discussion of public policy basis for workers compensation); see also *Madera Sugar Pine Co. v. Industrial Accident Commission of California*, 262 U.S. 499, 502-03, 43 S. Ct. 604, 67 L. Ed. 1091 (1923) (purpose and operation of workers compensation statutes generally in considering California scheme); *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 660, 359 P.3d 33 (2015) (employer may self-insure or obtain insurance coverage for workers compensation claims from authorized carrier or group-funded pool).

The Kansas workers compensation scheme has undergone major revisions since it was enacted in 1911. Among the significant amendments made in 1974, the Kansas Workers Compensation Act, K.S.A. 44-501 et seq., became mandatory for most employers. The Act has since been substantially overhauled in 1993 and 2011.

Likewise, tort law has not remained static over the past century. Pertinent here, the Kansas Legislature adopted comparative fault in 1974, effectively abolishing contributory negligence as a defense to common-law negligence claims. K.S.A. 60-258a; *Brown v. Keill*, 224 Kan. 195, 197, 580 P.2d 867 (1978). The comparative fault statute permits the determination of fault attributable to potential wrongdoers who have settled claims against them or who are immune from liability, such as employers in negligence actions for workplace injuries to their employees. Those settling or immune parties are commonly known as phantom defendants.

When comparative fault went into effect, employers had a right to subrogation for workers compensation benefits against any recovery an injured employee might make against a third-party wrongdoer, along with a credit for future benefits—matching the protections in K.S.A. 44-504(b). Until then, fault would not have been formally ascribed to an employer in a third-party negligence action. Comparative fault changed that and, thus, highlighted an anomaly with subrogation liens and future credits in K.S.A. 44-

9

504(b) for employers paying workers compensation benefits. An employer bearing some or even the predominate legal fault for its employee's injuries, though immune from liability in a negligence action, could recoup the full amount it paid in workers compensation benefits for medical expenses and lost income from any recovery the employee obtained from a defendant found to be at fault. The employer would, then, suffer no financial loss despite its negligence contributing to the employee's injury; and, in that respect, it would be in precisely the same preferred position as an employer that bore no legal fault for an employee's injury. The Kansas Supreme Court acknowledged the anomaly in *Negley v. Massey Ferguson, Inc.*, 229 Kan. 465, Syl. ¶ 2, 468-69, 625 P.2d 472 (1981), and characterized a full subrogation recovery by a negligent employer as an unavoidable "inequity" necessitated by the language of K.S.A. 44-504(b). 229 Kan. at 468.

The year after *Negley* was decided, the Legislature added subsection (d), requiring the reduction of an employer's subrogation lien and credit for workers compensation benefits if the employer bears some legal fault for the employee's injuries. See *Brabander v. Western Cooperative Electric*, 248 Kan. 914, 917, 811 P.2d 1216 (1991). As part of the major revision of the Workers Compensation Act in 1993, the Legislature replaced the phrase "damage award" in K.S.A. 44-504(d) with the term "recovery," thereby matching the language in K.S.A. 44-504(b). L. 1993, ch. 286, § 26. The statutory provisions governing liens, credits, and their reduction for an employer's fault have remained the same since then.

*Subrogation Liens under K.S.A. 44-504*

In tackling the proper measure of Southwest Kansas Co-op's subrogation lien and credit, our first obligation is to carry out the legislative purpose behind the enactment of K.S.A. 44-504(b) and (d), considered in tandem and as part of the comprehensive Workers Compensation Act. *Travelers Cas. Insurance v. Karns*, 56 Kan. App. 2d 388,

393, 431 P.3d 301 (2018). An appellate court should look initially to the words of a statute to discern legislative intent. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725-26, 317 P.3d 70 (2014). If particular language is open to more than one reasonable interpretation, the court may consider the overall statutory purpose and favor a reading that comes to a "consistent, harmonious, and sensible" result effectuating that purpose. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). Judicial interpretation should avoid adding something to the statutory language or negating something already there. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007). A court, of course, may also deploy those analytical tools to debunk a suggested interpretation of a statute as improbable, particularly when the suggestion would undermine a legislative purpose. See *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) (court should construe statute "to avoid unreasonable or absurd results"). We augment our examination of the statutory language with direction drawn from *Brabander* and *Enfield*, although neither case is entirely analogous to the circumstances here.

Hawkins filed his negligence action against multiple defendants, leading to settlements with and, thus, recoveries from two of them and a jury trial with a third that resulted in a verdict apportioning fault and fixing an amount of damages or a recovery for him. But K.S.A. 44-504 was not drafted with explicit guidance for figuring out liens and credits for employers based on third-party litigation with sequential settlements and verdicts.

In navigating the statutory language, we begin with the word "recovery," since it appears in K.S.A. 44-504(b) and (d) and is integral to both subsections. As a legal term, "recovery" carries several meanings, two of which fit here. The definitions, though related, refer to different things. First, a recovery may be "[t]he obtainment of a right to something . . . by a judgment or decree." Black's Law Dictionary 1528 (11th ed. 2019) (meaning 2). And it may be "[a]n amount awarded in or collected from a judgment or decree." Black's Law Dictionary 1528 (11th ed. 2019) (meaning 4). So a "recovery" may

11

be the right to be paid, whether or not any money is forthcoming. In that sense, an unsatisfied judgment is a recovery. But a recovery also may be an actual payment on a judgment, meaning money in hand.

Working through the statutory language of K.S.A. 44-504(b), we see the Legislature directs that an employer has a subrogation lien against a "recovery" an injured employee obtains against a third-party wrongdoer. The term appears to refer to the employee's right to recover from the third party, so the lien comes into existence contemporaneously with the employee's right and attaches to any money the employee receives then or later. A recovery for loss of consortium is excluded from the employer's lien. The statutory language plainly treats both settlements and judgments as recoveries. That subsection also describes the employer's credit against future workers compensation benefits. The credit reflects the amount by which the workers compensation benefits already received exceed what the injured employee has "actually [been] paid and recovered" from any third-party wrongdoer as of the date of the wrongdoer's payment. The actually-paid-and-recovered qualification on the credit tends to support reading "recovery" generally to mean a decree of or right to payment rather than money the injured employee has received. Our assessment of that part of the statute essentially matches the Tenth Circuit's approach. *Enfield*, 228 F.3d at 1250-51.[1]

[1]Having federal circuit authority construing state workers compensation law seemed sufficiently off the beaten procedural path to suggest an explanatory comment, if only parenthetically. Enfield worked for the City of Goodland and was injured on the job while removing a utility pole using equipment the A.B. Chance Company manufactured. Enfield sued A.B. Chance on state law products liability claims and relied on diversity jurisdiction to file the action in federal district court. The City later intervened to protect its rights under K.S.A. 44-504, based on the workers compensation benefits it had paid. The intervention did not disturb the district court's diversity jurisdiction. See *Siloam Springs Hotel v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015) (diversity jurisdiction determined at time complaint filed); *Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1013 (9th Cir. 2006) (federal court retains diversity jurisdiction if nondiverse intervenor is not an essential party). After Enfield won a jury verdict against A.B. Chance, the City

asked the district court to determine its lien and credit rights under K.S.A. 44-504 and, disappointed with the result, appealed that ruling.

Here, of course, Southwest Kansas Co-op paid workers compensation benefits to Hawkins, and Hawkins has obtained recoveries within the meaning of K.S.A. 44-504(b). So Southwest Kansas Co-op has subrogation lien and future credit rights—a point nobody disputes. The value of any lien or credit is, however, a matter of considerable dispute. And that brings us to K.S.A. 44-504(d) governing the reduction of liens and credits based on the legal fault of an employer for its employee's injuries. Unfortunately, the statutory language is something less than crystal clear.

The reduction is triggered if the employer's negligence "is found to have contributed to" the employee's injuries. But that part of the statute is written in the passive voice, so we don't know who specifically must make the finding of contributory negligence. That said, we have no doubt that a jury rendering a verdict fixing the employer's fault along with the named defendants and other phantom defendants in an employee's third-party action fits the legislative design. We have an appropriate jury verdict here. A district court's finding of fault following a bench trial would likewise be sufficient. We needn't speculate on whether an apportionment of fault in a court-approved settlement in a third-party action, with or without the employer's intervention, would necessarily be satisfactory. But an apportionment of fault to which the employer agrees as part of a settlement or consent decree presumably would be a binding admission sufficient for K.S.A. 44-504(d).

The jury verdict here adjudicated Southwest Kansas Co-op to be 25 percent at fault for Hawkins' injuries. The next step requires applying that percentage to something to compute the amount by which the employer's subrogation lien and credit for future benefits should be reduced. The Kansas Supreme Court has charted at least part of the path for us in *Brabander*, 248 Kan. at 918. Construing the pre-1993 version of K.S.A. 44-

13

504(d), the court held that the percentage of fault ascribed to the employer would be multiplied by the damages awarded the injured employee to determine the dollar amount of the reduction. The court was untroubled by the statutory directive that the lien or credit "shall be diminished by the *percentage* of the damage award attributed to the negligence of the employer." (Emphasis added.) K.S.A. 1992 Supp. 44-504(d). The phrasing of the statute is odd in that damage awards are expressed in dollar amounts, not percentages. But percentage can mean "an indeterminate part," which seems to fit more naturally than the predominate meaning of "a part of a whole expressed in hundredths." Merriam-Webster's Collegiate Dictionary 859 (10th ed. 2001). The *Brabander* court categorically rejected the argument that the subrogation lien itself should be reduced by the percentage of fault attributed to the employer—an otherwise plausible reading of the language. 248 Kan. at 918. But a lien reduction corresponding to the employer's percentage of legal fault would only haphazardly (and partially) rectify the inequity recognized in *Negley*.

As we have said, two years after *Brabander*, the Legislature substituted "recovery" for the phrase "damage award" in K.S.A. 44-504(d) as part of the 1993 revision of the Workers Compensation Act. The Tenth Circuit applied the amended version of K.S.A. 44-504(d) in *Enfield* and concluded the rewording did not change the method for computing the reduction of the employer's lien and credit in that case. So the employer's percentage of fault should be multiplied by the employee's "recovery" to yield a dollar amount reducing the lien and any credit. The Tenth Circuit rejected the idea that the amendment signaled some design to legislatively overrule *Brabander*. *Enfield*, 228 F.3d at 1252.

The recovery in *Enfield* had to be the damages the jury awarded, since A.B. Chance was the only defendant, there were no pretrial settlements with other potential defendants, and no fault was attributed to Enfield. The *Enfield* court did not have a situation in which a plaintiff had settled with some defendants, yielding recoveries, and

14

had gone to trial against a remaining defendant, yielding a recovery in the form of a verdict assessing fault and fixing damages.

Where, as here, a jury has rendered a verdict apportioning fault among one or more active defendants, the plaintiff, and phantom defendants that have settled or are otherwise immune and has arrived at a dollar amount for the plaintiff's damages, those determinations should be used to calculate the reduction of the employer's workers compensation lien and future credit. The same would be true of a district court judgment entered following a bench trial. First, of course, our conclusion is consistent with *Brabander* and *Enfield*. More particularly, however, that common approach directly addresses and corrects the inequity in denying a reduction in the employer's subrogation lien or future credit based on its adjudicated fault for the employee's injuries. The fault-driven reduction aligns with the liability the employer would have faced in the employee's civil action but for the workers compensation bar. To reiterate: Without a corresponding lien and credit reduction, the employer would otherwise realize an undeserved financial break ensconced in the public policy considerations underlying the Workers Compensation Act, especially compared to those employers that pay benefits to injured employees and bear no legal fault for the injuries.

In this case, the jury found Southwest Kansas Co-op to be 25 percent at fault and fixed Hawkins' damages at $4,081,916.50. The resulting offset or reduction against the workers compensation benefits is $1,020,479.10. In the words of K.S.A. 44-504(d), Southwest Kansas Co-op's "subrogation interest or credits against future payments . . . shall be diminished" by that amount. The impact on the subrogation lien is straightforward. As provided in K.S.A. 44-504(b), Southwest Kansas Co-op's lien was the amount it had paid to Hawkins in workers compensation benefits as of the date of recovery. The jury verdict was rendered on May 5, 2011, and we understand Southwest Kansas Co-op had paid $852,460.34 by then. After subtracting the statutory reduction

15

from the benefits paid, the administrative law judge and the Board should have reduced the lien to $0, and Southwest Kansas Co-op would have had a deficit of $168,018.80.

*Credit for Future Benefits under K.S.A. 44-504*

Determining Southwest Kansas Co-op's credit for future benefits isn't quite as linear an exercise. But an employer's subrogation lien and the future credit function as an integrated whole within the workers compensation scheme. The calculation should be approached that way. The credit, like the lien, should be reduced by the employer's fault-based portion of the employee's damages as determined by the fact-finder in the third-party litigation—eliminating the inequitable windfall identified in *Brabander*. But the overall diminution of the lien and the credit should not exceed that amount, since a larger offset would effectively impose a penalty on the employer.

Consistent with that purpose, an employer would be eligible for a credit only after providing additional workers compensation benefits equaling any deficit created because the statutory reduction under K.S.A. 44-504(d) exceeded the lien for benefits already provided. Here, Southwest Kansas Co-op would have had to pay $168,018.80 in workers compensation benefits to Hawkins after May 5, 2011, to be in a position to claim a credit going forward from that point.

The event identified in the statute triggering the computation of the employer's credit is the injured employee's receipt of money in full or partial satisfaction of any "judgment, settlement or recovery" in the third-party action. K.S.A. 44-405(b). Under K.S.A. 44-504(b), the credit reflects the amount by which the workers compensation benefits the employer has paid exceed the money the employee has actually received in the third-party action, after making any reduction required under K.S.A. 44-405(d).

16

Hawkins has never received any money based on the verdict in the jury trial because the only parties found to have legal fault for his injuries were Western Steel, which had already settled and was a phantom defendant, and Southwest Kansas Co-op, which had immunity by virtue of the workers compensation bar. As we have explained, the district court approved the settlement with Western Steel that designated the full amount as compensation for loss of consortium. Accordingly, that settlement amount was exempt under K.S.A. 44-405(b) from any subrogation lien or future credit. (On appeal, Southwest Kansas Co-op has incidentally groused about the settlement's damage designation as a legal fiction. It may be. But Southwest Kansas Co-op chose not to intervene in Hawkins' negligence action and, thus, relinquished any platform to complain about the fiction to the district court. And the company recognizes it can't construct the platform now.)

Hawkins also settled with JLG, and that settlement is not statutorily exempt from a subrogation lien or credit. But, as we have held, Southwest Kansas Co-op had its subrogation lien eclipsed by the jury verdict. That did not, however, automatically extinguish Southwest Kansas Co-op's statutory right to a credit.

The terms structuring JLG's settlement through annual payments to Hawkins for 20 years impose additional wrinkles in determining any credit due Southwest Kansas Co-op. The plain language of K.S.A. 44-504(b) treats each annual installment of $75,000 as an amount Hawkins recovers when he receives the payment. The receipt triggers the credit. Assuming Southwest Kansas Co-op paid workers compensation benefits of more than $168,018.80 to Hawkins after May 5, 2011, the full reduction required by K.S.A. 44-504(d) would have been satisfied at that point. After that, Southwest Kansas Co-op could claim a credit to the extent a given $75,000 payment to Hawkins exceeded the additional benefits the company had paid him as of the date he received that payment. The record does not provide readily discernable information that would permit us to compute the extent of any credit.[2]

17

[2]We offer an illustrative, though purely hypothetical, example of how the credit would function in this case. For our illustration, we assume Southwest Kansas Co-op paid $25,000 a year in additional workers compensation benefits to Hawkins starting in 2011. We further assume Hawkins received $75,000 under the JLG settlement each May 1, starting in 2012. Southwest Kansas Co-op would have no claim for a credit in 2011, 2012, and 2013 because the difference between Hawkins' annual settlement payment of $75,000 and the benefits provided of $25,000 would not have exceeded the $168,018.80 deficit carried over from the lien reduction. In 2014, however, the company would have realized a credit of $31,981.20, reflecting the difference between the settlement payment ($75,000) and the benefits provided ($25,000) or $50,000 then reduced by the remainder of the statutory reduction ($18,018.80). In each following year, the company would have a credit equal to the difference between the $75,000 settlement to Hawkins and the workers compensation benefits provided up to then, as reduced by any existing credit.

Had JLG settled with Hawkins for an immediate payment of $1.5 million rather than structured payments spread over 20 years that amount would have been used in determining the credit. The payment would have been essentially contemporaneous with the jury verdict. The $1.5 million would have been reduced by the $168,018.80, reflecting the amount by which Southwest Kansas Co-op's liability based on the jury verdict exceed the workers compensation benefits it had provided by then, yielding a credit of $1,331,981.20 against future benefits.

We differ with the *Enfield* court in determining an employer's credit for future benefits. The Tenth Circuit's method reduces the future credit by the full amount of the employer's fault-based responsibility for the employee's damages while also reducing the employer's subrogation lien by the same amount. *Enfield*, 228 F.3d at 1252-53. The court doesn't explain why it takes that tack. The approach entails a form of double counting against the employer. And it disassociates the reduction of an employer's subrogation lien from the reduction of future credit when they actually are coordinated parts of a whole: The diminution of the employer's right to reimbursement for workers compensation benefits it has paid or will pay to an injured employee by an amount equivalent to the employer's fault-based responsibility for the employee's damages, thereby shielding the employee's recovery from third parties to that extent. Our method applies the amount reflecting the employer's fault-based responsibility for those damages to both the subrogation lien and a future credit as a unitary setoff against workers compensation

18

benefits. The Tenth Circuit (incorrectly in our view) uses the amount first to reduce the employer's lien and then a second time to reduce the employer's future credit.

*The Board's Position Considered*

The administrative law judge and the Board majority applied Southwest Kansas Co-op's percentage of fault, as found by the jury, to the settlement between Hawkins and JLG to calculate the subrogation lien and the credit for future benefits. Southwest Kansas Co-op also supported that method as an alternative way of applying K.S.A. 44-504. But we find the approach flawed in several respects. First, the language of K.S.A. 44-504(d) contemplates using both the fault allocation and the assessment of damages or the recovery for the injured employee made by a fact-finder when there is a jury trial or a bench trial. In that circumstance, the fact-finder will have heard evidence on both issues and presumably will have arrived at reasonable determination, subject to posttrial motions and appellate review. Those two findings—the employer's fault and the employee's damages—establish what the employer would have been legally responsible for absent the workers compensation bar on liability. And an offset of that amount against the employer's subrogation interest and future credit eliminates the inequity recognized in *Brabander*. The Tenth Circuit did precisely that in *Enfield* to compute the reduction in the employer's subrogation lien. The administrative law judge and the Board majority mistakenly suggest they have followed *Enfield*.

Substituting the amount of a settlement between the employee and another party with potential fault and liability interjects an entirely different and off-kilter dynamic. A settlement, by its very nature, typically reflects a compromise that nobody thinks particularly represents the injured party's realistic recovery from the defendant in a trial. The amount is acceptable to each side, taking account of the often substantial costs and risks of litigation. Economic certainty supplants litigation brass, as plaintiffs accept less than they believe they deserve and defendants pay more than they think they should or

19

would owe. That artificiality is accentuated in a comparative fault case with multiple actual and phantom defendants. A given defendant may realistically face only some portion of the overall fault, so its potential liability could look quite different from other defendants. What it may be willing to pay in settlement should be quite different, as well.

In short, the amount JLG spent to buy its peace in Hawkins' negligence action bears little or no obvious correlation to what the jury found as to Southwest Kansas Co-op's fault and Hawkins' damages. Neither the language in K.S.A. 44-504(d) nor a logical application of comparative fault principles suggests using JLG's settlement with Hawkins to establish the dollar amount to which the jury's finding of fault attributable to Southwest Kansas Co-op should be applied to calculate the reduction of its lien and future credit.

The error was compounded here, given the terms of the settlement between JLG and Hawkins. JLG was to pay Hawkins $75,000 a year for 20 years beginning in 2012. The judge and the Board majority figured the settlement to be $1.5 million, as if it were cash on the barrelhead. But that's inaccurate. Hawkins has yet to receive half the full amount. Given the time value of money, the settlement isn't worth nearly that to Hawkins, and it has cost JLG somewhat less, since the company has retained a substantial portion of the total payout for years. The present value to Hawkins in 2011 was more in the vicinity of $1.0 million. That imposes another distorting effect the judge and the Board majority ignored. The distortion was particularly pronounced in their handling of the credit for future benefits.

The concurring and dissenting Board member looked only at the settlement with JLG to calculate any reduction in Southwest Kansas Co-op's subrogation lien or future credit and discarded the jury verdict entirely. First, of course, we see no sound reason to consider the amount of the settlement with JLG at all in computing the reduction. And ignoring the jury verdict effectively reads out of existence K.S.A. 44-504(d) because it

20

requires using a determination of fault attributable to the employer for that purpose. The Board member justified doing so because the settlement between Hawkins and JLG did not purport to apportion fault and, thus, no fault should be attributed to Southwest Kansas Co-op. That approach effectively imposes no reduction and, not surprisingly, reflects Southwest Kansas Co-op's preferred position on appeal. The company argues the outcome is eminently sound precisely because the court-approved settlement makes no finding of fault, reprising the Board member's explanation. But the argument trades on wordplay—no finding of fault is not the same as a finding of no fault. The first is the absence of a determination; the second is a determination of nil.

Southwest Kansas Co-op has offered other arguments to advance this position. The company suggests that the jury verdict cannot be applied to the earlier JLG settlement. But K.S.A. 44-504(d) contemplates use of the jury findings to diminish subrogation liens that attach to settlements that precede the jury trial. Nothing in K.S.A. 44-504(b) or (d) qualifies how a jury verdict may be used or limits its use to later settlements. In a case with multiple defendants, most settlements commonly would be reached before trial. Contrary to Southwest Kansas Co-op's intimation, the settlement with JLG did not create some sort of claim or issue preclusion as to its own fault or the measure of Hawkins' damages.

Southwest Kansas Co-op also suggests that the inclusion of phantom defendants for a jury's consideration in a comparative fault case can itself have distorting effects on the verdict. For example, an active defendant may be inclined to fob off liability on the phantom rather than trying to blame the plaintiff or directly attacking the plaintiff's claimed damages as inflated. In a given case, a defendant might well shape its litigation strategy that way. In this case, however, Southwest Kansas Co-op's protestation invites neither much legal consideration nor a lot of sympathy. As we have said, the company chose not to exercise its right to participate in the trial and, thus, to present evidence and argument guiding the jurors to what it viewed as the best result. Having strategically

21

elected to remain a phantom party in front of the jury, Southwest Kansas Co-op must now bear the consequences of its decision.[3]

[3]The jury did not apportion any fault to Hawkins. But such an apportionment would not affect the methods or the actual calculations we have outlined. The calculations are driven by the jury's allocation of fault to the employer and its determination of the injured employee's damages, as fixed in the verdict. Those are not variables once the jury has returned a verdict. In a negligence action, the jury must be instructed that finding a plaintiff to be 50 percent or more at fault bars a recovery. See *Nail v. Doctor's Bldg., Inc.*, 238 Kan. 65, 66-68, 708 P.2d 186 (1985); PIK Civ. 4th 105.01. If a jury finds a plaintiff to be at least 50 percent at fault, it returns a defense verdict without determining damages. See PIK Civ. 4th 181.04 (comparative fault verdict form). In that circumstance, the plaintiff would not realize a recovery for purposes of K.S.A. 44-504(d).

*Conclusion*

We reverse the Board's determination of Southwest Kansas Co-op's subrogation lien and future credits and remand for a redetermination of them consistent with this opinion. The lien has to be calculated as of the time of the jury verdict in Hawkins' third-party action based on the workers compensation benefits Southwest Kansas Co-op had then paid. Those are matters of undisputed historical fact, effectively making the calculation a nondiscretionary arithmetic exercise. The lien will equal the workers compensation benefits paid less the damages (or recovery) the jury awarded Hawkins multiplied by the percentage of fault the jury attributed to Southwest Kansas Co-op. The computation will yield a negative number.

In redetermining the future credit, the Board should consider each annual payment to Hawkins under the JLG settlement as a recovery actually paid and calculate any credit based on the workers compensation benefits Southwest Kansas Co-op had provided through the date of the JLG payment, once those settlement payments less the benefits paid exceeded the lien deficit. The Board, in its discretion, may reopen the record, with or

22

without a remand to the administrative law judge, to determine the value of the credit through the most recent settlement payment from JLG to Hawkins.

Reversed and remanded with directions.